RENDERED:  MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0041-MR

KENTUCKY PUBLIC PENSIONS AUTHORITY;
COUNTY EMPLOYEES RETIREMENT SYSTEM; AND
JOINT DISABILITY APPEALS COMMITTEE/
ADMINISTRATIVE APPEALS COMMITTEE        APPELLANTS

                APPEAL FROM FRANKLIN CIRCUIT COURT
v.              HONORABLE PHILLIP J. SHEPHERD, JUDGE
                ACTION NO. 18-CI-00180

JODY D. SHEA                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

ECKERLE, JUDGE:  Appellants (hereinafter, "KPPA")[1] appeal an Opinion and

Order of the Franklin Circuit Court reversing a final, administrative decision that

---

[1] The Kentucky Public Pensions Authority was previously the Kentucky Employees Retirement Systems.

required Appellee, Jody Shea (hereinafter, "Shea") to repay more than $150,000 in retirement benefits. We find no error with the Circuit Court's application of the doctrine of equitable estoppel. Thus, we affirm.

## BACKGROUND

Shea is a long-term public servant. He served our country in the United States Marine Corps prior to his service in law enforcement in Kentucky. Shea is also a single father of a young boy who was seven years of age when Shea sought to retire.

Once he had acquired enough service credits, Shea explored his retirement options. He met with Robbie Adkins (hereinafter, "Adkins"), a retirement counselor for the KPPA.[2] Adkins is also a long-time public servant. He has counseled many retirees and potential retirees. No evidence was introduced that Adkins had erred in his duties over the years.

When questioned many years later about the meeting he had with Shea, Adkins neither recalled the meeting nor Shea. Understandably, remembering one of hundreds or thousands of such meetings many years later would be challenging. Notably, Adkins could not even estimate how many similar meetings he has had over the course of his approximately 20-year career working as a

---

[2] As the names of the retirement agencies have changed over the years, we use KPPA generically to refer to all current and past iterations.

retirement counselor for KPPA, and he conceded that he may have performed as many as five per day.

Adkins logged a brief note *after* the 29-minute meeting with Shea. The note did not reference any questions Shea may have asked about reemployment after retirement. Adkins summarily wrote, "member in office, went over ests already done and checked, discussed options in detail, gave 6000 and explained in detail how to fill out[.]"[3] Adkins described his normal course of business of logging notes after each counseling session. He believed that he would have included a note about any questions regarding reemployment, but he also admitted that it was possible that he would have failed to recall or record it.

In contrast, Shea recalled the meeting in vivid detail. Specifically, Shea remembered at the end of the meeting asking Adkins about the effects, if any, reemployment would have on his retirement benefits. Shea testified that he was informed that if he desired to return to part-time hazardous duty, he needed to wait 30 days after he retired, and if he desired to return to full-time hazardous or non-hazardous duty, he needed to wait 90 days after he retired. Shea decided to retire and later returned with the requisite paperwork.

---

[3] The "ests" seemingly refers to estimates of retirement benefits, and "6000" refers to one of the forms a person must fill out to retire.

Shea retired on December 1, 2011. Shea was provided a Retiree Handbook that stated, in relevant part:

> Duration of separation from service
>
> An employee retiring from a hazardous position and returning to a hazardous position that would otherwise be required to participate in CERS, KERS, or SPRS must observe a one (1) calendar month break in service before returning to work with a participating agency. Most other employees will be required to observe a three (3) month break in service before returning to work. If you do not observe your break in service, your retirement will be voided and you will have to repay all benefits you received . . . .

Subsequently, Shea decided to return to part-time work. He spoke with the Versailles Police Chief, who had part-time work available. Seeking to avoid endangering his retirement, Shea called KPPA about his intent to return to work. Shea said he was advised to submit a Form 6751 to seek reemployment with a participating agency. On January 3, 2012, Shea filed with KPPA a Form 6751, entitled "Member and Employer Certification Regarding Reemployment." The form contained signatures from Shea and Chief John Wilhoit of the Versailles Police Department. Both men certified that there was no prearranged agreement for Shea to return to work. Accompanying this form was a memo from Shea noting he was "interested in re-applying for a hazardous position with an agency in the [Kentucky Retirement System], and requesting that the [KPPA] acknowledge my request."

KPPA reviewed the form and issued to Shea a "Memorandum" dated January 5, 2012 (hereinafter "2012 Memo"), stating in relevant part:

> Based upon the information you provided, I have determined that your employment with the City of Versailles, an agency that participates in the Kentucky Retirement Systems, will not affect your monthly retirement benefits provided that you do not begin your new employment until after you have observed the proper break in service. If you return to a Full Time Hazardous Duty position, you must observe a one (1) calendar month break in service and not begin employment until after January 1, 2012. If you are returning to a Part-Time or Non-Hazardous position, you are required to observe a three (3) calendar month break in service and not begin employment until after March 1, 2012. For more information please contact Kentucky Retirement Systems.

Shea then began working as a part-time police officer with the City of Versailles on January 11, 2012, more than one month, but fewer than three months, post-retirement. Shea claimed he was not making much money in his part-time position, grossing (pre-tax) approximately $5,000 total during the approximately two months he would later discover he was ineligible to return to work.

KPPA did not catch the issue for many years, however. Due to a change in the payroll system used by the City of Versailles, it did not report Shea's employment to KPPA until April 1, 2015, and it was not until January 21, 2016, that the City of Versailles notified KPPA of Shea's actual start date with the police department. KPPA then investigated and determined that Shea had violated the

terms of his retirement by becoming reemployed in a part-time position within three months of his retirement. Accordingly, on March 16, 2016, KPPA notified Shea by certified letter that his retirement was being voided, and that he would have to repay all received benefits, including retirement and health insurance benefits, totaling $157,513.09.

Shea then sought and obtained injunctive relief against KPPA before re-retiring under advice of counsel. Shea also requested an administrative hearing, which was granted. At the hearing, Shea and KPPA presented the aforementioned evidence.[4]

In position statements, Shea argued that KPPA misinformed him regarding when he could return to work following retirement. Shea claimed if he were in technical violation of the reemployment rules, he was entitled to equitable relief either through the doctrine of laches or equitable estoppel. KPPA argued against Shea's position, requesting Shea repay all received benefits. The Hearing Officer then issued her Findings of Fact, Conclusions of Law, and Recommended Order (hereinafter "Recommended Order"), advocating that the Board of Trustees of Kentucky Retirement Systems (hereinafter, "Board") deny Shea's equitable claims and find that KPPA met its burden of proof on voiding Shea's retirement.

---

[4] The parties also introduced evidence regarding the statutory and regulatory scheme and documents and internal memos from KPPA regarding manners of interpreting various provisions. Shea attempted to show that the various legal provisions were confusing.

The parties filed exceptions, and the Board issued its Final Order, adopting the Recommended Order's findings of fact and conclusions, save for two typographical corrections.

Shea appealed the administrative decision to the Franklin Circuit Court. The Circuit Court ultimately entered an Opinion and Order reversing the Final Order, finding both equitable estoppel and the doctrine of laches applied to prevent KPPA from recoupment of the $157,513.09 in paid benefits. KPPA appealed and raises multiple allegations of error on appeal. We address those allegations of error below; additional details will be discussed as necessary.

## I. Equitable estoppel and the weighing of evidence

KPPA's first two claims are that the Circuit Court erred by allegedly reweighing the evidence and finding equitable estoppel should apply to bar KPPA from recovering from Shea.

Generally speaking, equitable estoppel may be invoked against a governmental entity, but only "in unique circumstances where the court finds exceptional and extraordinary equities involved." *Weiand v. Board of Trustees of Kentucky Retirement Systems*, 25 S.W.3d 88, 91 (Ky. 2000). The elements of equitable estoppel are as follows:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the

party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Id.* (quoting *Electric and Water Plant Board of City of Frankfort v. Suburban Acres Development, Inc.*, 513 S.W.2d 489, 491 (Ky. 1974)). Equitable estoppel is a question of fact for the Board to consider first. *Board of Trustees, Kentucky Retirement Systems v. Grant*, 257 S.W.3d 591 (Ky. App. 2008).

The standard of review to be applied to appeals from administrative decisions depends upon whether the decision grants or denies relief to the party bearing the burden of proof:

When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. *See Bourbon County Bd. Of Adjustment v. Currans*, Ky.App., 873 S.W.2d 836, 838 (1994); *Transportation Cabinet v. Poe*, Ky., 69 S.W.3d 60, 62 (2001) (workers' compensation case); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Where the fact-finder's decision is to deny relief

-8-

to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *See Currans*, *supra*; *Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 176 (2000) (workers' compensation case); *Morgan v. Nat'l Resources & Environ. Protection Cabinet*, Ky.App., 6 S.W.3d 833, 837 (1999). "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, Ky.App., 994 S.W.2d 516, 519 (1998) (citing *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 309 (1972)). . . . A reviewing court is not free to substitute its judgment for that of an agency on a factual issue unless the agency's decision is arbitrary and capricious. *See Johnson v. Galen Health Care, Inc.*, Ky.App., 39 S.W.3d 828, 832 (2001).

*McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458-59 (Ky. App. 2003). Here, Shea bore the burden of proving entitlement to equitable relief. Accordingly, we shall review the Board's Final Order pursuant to a "two-step approach by first considering whether the Board had issued a final order properly supported by substantial evidence[,]" and, second considering "'whether the evidence in [the burden-bearing] party's favor is so compelling that no reasonable person could have failed to be persuaded by it[.]'" *Kentucky Retirement Systems v. Ashcraft*, 559 S.W.3d 812, 819 (Ky. 2018) (quoting *McManus*, *supra*).

In Shea's case, the Hearing Officer recommended finding that Shea failed to show, by a preponderance of evidence, that KPPA should be estopped

from enforcing KRS[5] 61.685 and seeking repayment of benefits. Specifically, the

Hearing Officer suggested that:

> [Shea] has failed to establish the first element of
> equitable estoppel – that is, the conduct of [KPPA] herein
> does not amount to a false representation or concealment
> of material facts. [Shea] was specifically and clearly
> provided the correct information and advised of the dates
> after which he could properly return to work by virtue of
> the KRS memorandum dated January 5, 2012. As such,
> the record does not establish that [KPPA] engaged in
> conduct amount to a false representation or concealment
> of the fact that [Shea] was prohibited from returning to
> work in a part-time or nonhazardous position prior to
> March 1, 2012. Further, the record does not establish
> extraordinary circumstances which would merit the
> application of the equitable doctrine against a
> government agency.

The Board adopted this recommendation in its Final Order.

The Circuit Court disagreed, finding that under the *McManus*

standard, the evidence in favor of Shea was so compelling that the Board should

have found for Shea because no reasonable person could have failed to be

persuaded by the evidence. The Circuit Court reasoned that the following facts

were compelling: the statutory scheme was ambiguous;[6] there was no evidence

---

[5] Kentucky Revised Statutes.

[6] Shea has variously argued that the statutory scheme was ambiguous about the breaks in service required when retirees from hazardous duty seek reemployment. The Circuit Court also found some ambiguity, specifically because KRS 61.637(17)(a) provided for a three-month break of service before re-employment "in a position that is not considered regular full-time" with state agencies, and KRS 61.637(17)(c) provided that for a one-month break of service before re-employment if the member was "receiving a retirement allowance from the State Police

Shea acted in bad faith; "the financial consequences to [Shea] are potentially catastrophic"; and Shea committed "at most an innocent mistake[.]" The Circuit Court also held that Shea's "premature" return to work "was the result of being misled, or at least the result of confusion for which [KPPA] is responsible." The Circuit Court held that the Board erred by finding Shea's testimony was self-interested regarding the alleged misrepresentation that Shea only had to wait 30 days before returning to part-time, hazardous employment. The Circuit Court also discounted the 2012 Memo:

> On the other hand, KRS does argue that the Memo it provided to Mr. Shea should have dispelled any confusion. The [2012] Memo, by itself, does represent substantial evidence that Mr. Shea was informed of how long he needed to wait before reemployment. But in combination with the information provided by [Counselor] Adkins, the [2012] Memo merely engenders confusion. Moreover, in combination with the inherent ambiguity of KRS 61.637(17)(c), any layperson would be utterly confused as to the proper retirement procedure. Mr. Shea could have interpreted the [2012] Memo to not address the issue of returning to part-time hazardous employment. Regardless of how the layman might interpret the [2012] Memo, Mr. Shea had no reason to analyze it closely, insofar as [Counselor] Adkins had informed him (wrongly) of how long he needed to wait. Therefore, the evidence in favor of Mr. Shea is so

Retirement system or from hazardous duty retirement coverage and is employed in a regular full-time position required to participate in the State Police Retirement System **or in a hazardous duty position**[.]" Opinion and Order at 4 (emphasis added). However, the relevance of this alleged ambiguity is questionable, as Shea is neither a legal expert nor a lawyer, and it does not appear that he investigated the applicable statutes and regulations before reemployment.

> compelling that no reasonable person could fail to be
> persuaded by it.

Opinion and Order, pp. 7-8.

We agree with the Circuit Court that this case presents a rare circumstance in which the *McManus* standard necessitates reversal of the administrative decision when the administrative board found against the party bearing the burden of proof. Notably, the Circuit Court found the 2012 Memo was substantial evidence in favor of KPPA, but its substantial value was limited by the additional and conflicting advice Shea received from the KPPA.

As our Supreme Court has stated, if the substantial evidence for both sides is "in equipoise[,]" then the "the *McManus* 'compelling evidence' standard properly breaks the tie." *Bradley v. Kentucky Retirement Systems*, 567 S.W.3d 114, 120 (Ky. 2018). But the evidence here was not in equipoise. KPPA had the 2012 Memo on its side of the balance, but multiple, other, credible pieces of evidence weighed on Shea's side.

Shea presented compelling, concrete, and substantial evidence about an erroneous statement that was given to him during his retirement counseling session. To minimize this evidence's substantiality, KPPA relied on inferences that could be drawn from the *lack* of evidence – Adkins could not recall the conversation with Shea, and the *de minimis* log regarding the meeting was silent about reemployment. KPPA's employees presented generalities and normal-

-12-

course-of-business testimony, but they could not specifically recall the actual meeting, Shea personally, or any of the details discussed.

Per *McManus*, the standard of review is high, but it does not simply require a rubber stamp of administrative decisions. We must consider "whether the applicant's evidence was so compelling that no reasonable person could fail to be persuaded." *Bradley*, 567 S.W.3d at 119. Here, Shea's evidence met that high mark. Shea proved that: (1) he received misinformation about when he could reemploy, and that misinformation was further compounded by the supplied Retiree Handbook that indicated hazardous retirees needed only wait one month before returning to hazardous employment; (2) KPPA should reasonably expect that Shea would act upon the misinformation and obtain part-time, hazardous employment during the three-month period; and (3) KPPA had knowledge of the one-month and three-month rules. *Weiand*, *supra*. Additionally, Shea proved that: (1) he lacked the knowledge of the one-month and three-month rules;[7] (2) he acted upon the misinformation in good faith, even submitting a Form 6751 and calling KPPA prior to reemployment in an attempt to avoid jeopardizing his retirement benefits; and (3) he incurred a substantial injury in the form of a $157,513.09 repayment penalty. *Id*. Moreover, equitable estoppel may apply against KPPA

---

[7] Even more, the Circuit Court found the applicable law was ambiguous. We do not agree that the statutory and regulatory scheme was ambiguous, but we do agree that the statutes and regulations would be difficult for a layperson to comprehend fully.

given the "unique circumstances" and "exceptional and extraordinary equities" involved because this case presents "a situation in which the agency has a direct, immediate pecuniary interest in the matter[.]" *Spalding v. Marion County Bd. of Educ.*, 452 S.W.3d 611, 615-16 (Ky. App. 2014) (collecting cases).

Regarding the elements of equitable estoppel, KPPA argues that the Circuit Court's Opinion and Order erroneously permits equitable estoppel based solely on "confusion" that KPPA created by giving Shea conflicting, reemployment dates. But any "confusion" was due to inconsistent positions taken by KPPA regarding reemployment. "Equity will not allow the respondent to benefit from the inconsistent position." *Laughead v. Commonwealth, Dep't of Transp., Bureau of Highways*, 657 S.W.2d 228, 230-31 (Ky. 1983).

Additionally, KPPA argues that Shea, not KPPA, had the superior knowledge about the date that his part-time, hazardous employment began; thus, he is not entitled to equitable relief. This argument is a *non sequitur*, as it ignores the inconsistent positions it gave to Shea that would have led him to believe that there was no error with his start date regardless of his supposed "superior knowledge."

Accordingly, the Circuit Court properly invoked equitable estoppel to preclude KPPA from recoupment of the retirement and healthcare benefits. We affirm the Circuit Court's Opinion and Order on this issue.

## II. Laches[8]

The Circuit Court also found that the doctrine of laches applied to bar KPPA from recouping the expended monies because, that Court found, KPPA had unreasonably delayed in pursuing its claim. KPPA has appealed this holding. Because we are affirming on the equitable estoppel ground, we need not decide the laches issue.

## III. Complying with the plan/enabling statute and federal tax law

Finally, KPPA argues that the Circuit Court erred by ignoring KPPA's legal obligation to comply with its plan/enabling statute and federal tax law. Essentially, KPPA argues that estoppel cannot apply because KPPA must follow its statutes and regulations in order to maintain its tax status. While KPPA's argument may be facially appealing, our Court and the Supreme Court have already determined that estoppel claims are permitted against Kentucky governmental entities. *Weiand*, 25 S.W.3d at 91. *See also Fryrear*, *supra* (applying equitable estoppel to the voiding of retirement benefits). We are bound to follow our Supreme Court's established precedent. SCR[9] 1.030(8)(a); *Bentley v.*

---

[8] A similar question of whether laches applies to state agencies is currently pending before the Kentucky Supreme Court, *see Professional Home Health Care v. Commonwealth of Kentucky Cabinet for Health & Family Services Department for Medicaid Services*, No. 2023-SC-0226-DR, and KPPA filed a motion to hold the instant appeal in abeyance pending the outcome of that case. Because we elect not to decide the laches question, we have denied the motion by separate order.

[9] Kentucky Rules of the Supreme Court.

*Bentley*, 172 S.W.3d 375, 376 (Ky. 2005) ("Of course, neither a circuit court nor the Court of Appeals has authority to overrule precedents of this Court or our predecessor court."). Hence, we affirm the Circuit Court's Opinion and Order.

## CONCLUSION

Shea received inaccurate information about when he could return to work following his retirement, and he relied on incorrect statements when returning to a part-time job in law enforcement. Shea was entitled to the application of equitable estoppel under these facts. The Circuit Court correctly held that this case represents one of the rare instances where the *McManus* "compelling evidence" standard was met to overturn the Board's Final Order on the equitable estoppel claim. Hence, we AFFIRM the Opinion and Order below inasmuch as it reverses and remands the Board's Final Order for a finding in favor of Shea on the equitable estoppel claim.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Katherine Rupinen
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Martha C. Gray
Frankfort, Kentucky